UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 3:07-CV-00029-KKC

MARATHON PETROLEUM COMPANY LLC,
ET AL.                                                                          PLAINTIFFS,

v.                                         **OPINION AND ORDER**

GREGORY D. STUMBO, *in his official as*
*the Attorney General of Kentucky*                              DEFENDANT.

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

This matter is before the court on the Defendant Attorney General's Motion to Dismiss (Rec. No. 9); the Plaintiffs' Motions for Leave to File Second Amended Complaint and a Supplemental Brief in Opposition to Defendant's Motion to Dismiss (Rec. No. 19); and the Attorney General's Motion for Leave to File Surreply to Marathon's Motion for Leave to File Second Amended Complaint and Supplemental Brief (Rec. No. 25).

Because the court must abstain from resolving the issues raised in the Plaintiffs' First Amended Complaint, this court will grant the Attorney General's Motion to Dismiss. Further, because the court would also have to dismiss the Plaintiff's Second Amended Complaint on abstention grounds, the Court will deny the Plaintiffs' Motion for Leave to File Second Amended Complaint because the amendment is futile. Finally, because no further briefing is necessary on the issues raised in the Motion to Dismiss or in the Motion for Leave to File Second Amended Complaint, the court will deny the Plaintiffs' Motion for Leave to File a Supplemental Brief in Opposition to Defendant's Motion to Dismiss and the Attorney General's Motion for Leave to File Surreply to Marathon's Motion for Leave to File Second Amended Complaint and Supplemental Brief.

## I.      History.

## A.      The Kentucky Act.

The Kentucky statute at issue in this case is KRS § 367.372 *et seq.* (the "Kentucky Act").

It provides, in relevant part,  the following:

> (1) (a) When a Condition Red has been declared by the United States Department of Homeland Security under the Homeland Security Advisory System or the Governor has declared a state of emergency under KRS 39A.100, the Governor may implement this section by executive order for a period of thirty (30) days from notification of implementation, as required by KRS 367.376. The order implementing this section shall be limited to the geographical area indicated in the declaration of emergency.

> (b) No person shall sell, rent, or offer to sell or rent, regardless of whether an actual sale or rental occurs, a good or service listed in this paragraph or any repair or reconstruction service for a price which is grossly in excess of the price prior to the declaration and unrelated to any increased cost to the seller. Goods and services to which this section applies are:

> 1. Consumer food items;
> 2. Goods or services used for emergency cleanup;
> 3. Emergency supplies;
> 4. Medical supplies;
> 5. Home heating oil;
> 6. Building materials;
> 7. Housing;
> 8. Transportation, freight, and storage services; and
> 9. Gasoline or other motor fuels.

> (c) A person who increases a price does not violate this subsection if the price increase is attributable to an additional cost imposed by a supplier of a good or other costs of providing the good or service, including an additional cost for labor or materials used to provide a service.

> (2) The provisions of this section may be extended for an additional period, not to exceed thirty (30) days, by the Governor if necessary to protect the lives, property, or welfare of the citizens.

> (3) If a person sold or rented a good or service listed in subsection (1) of this section at a reduced price in the thirty (30) days prior to the Governor's implementation of this section, the price at which that person usually sells or rents the good or service

2

in the area for which the declaration was issued shall be used in determining if the person is in violation of this section.

(4) If a person did not sell or rent or offer to sell or rent a good or service listed in subsection (1) of this section prior to the Governor's implementation of this section, the price at which a good or service was generally available in the area for which the declaration was issued shall be used in determining if the person is in violation of this section.

KRS § 367.374**.**

**B.     The Governor's Declaration of a State of Emergency and Implementation of the Kentucky Act After Hurricane Katrina.**

On August 30, 2005, Kentucky Governor Ernie Fletcher issued an Executive Order declaring a State of Emergency in Kentucky due to the potential heavy rainfall, flooding, tornadoes, and other natural hazards after Hurricane Katrina.  The Executive Order stated that it was effective,  "until terminated by subsequent Order or by operation of law."  (Rec. No. 1 Complaint, Ex. 1).

On August 31, 2005, Governor Fletcher issued another Executive Order by which he implemented the Kentucky Act as to gasoline sales in the state.  The Governor ordered that "[n]o person. . . shall sell or offer to sell gasoline at a price grossly in excess of the price prior to the declaration by Executive Order on August 30, 2005, that a State of Emergency exists in the Commonwealth of Kentucky."  (Rec. No. 1, Complaint, Ex. 2).  The August 31, 2005 Executive Order provided that it was "in effect for the duration of the State of Emergency herein referenced, and shall be subject to renewal thereafter, subject to applicable law, if necessary to protect the lives, property, or welfare of the citizens of the Commonwealth of Kentucky."  (Rec. No. 1, Complaint, Ex. 2).

**C.     The State Court Action – the Attorney General v. Marathon and Speedway.**

On the morning of May 10, 2007, the Attorney General filed an action in Franklin Circuit

Court against Marathon Petroleum Company, LLC, Marathon Oil Corporation, and Speedway SuperAmerica, LLC.  In the state court complaint, the Attorney General charged that the defendants violated the Kentucky Act by selling motor fuels during the period covered by the Kentucky Governor's Declaration of Emergency following Hurricane Katrina at prices that were grossly in excess of pre-emergency prices and that were unrelated to any increase in costs which the defendants had incurred. (*Stumbo v. Marathon Petroleum Co.*, E.D.K.Y, Civil Act. No. 3:07-CV-30, Rec. No. 1, Notice of Removal, State Court Complaint, ¶ 14).

**D.      This Federal Action – Marathon and Speedway v. the Attorney General.**

Within an hour or two after the Attorney General filed the state court action, two of the three defendants in that action – Marathon Petroleum Company, LLC and Speedway SuperAmerica, LLC (collectively, "Marathon") –  filed this federal action against the Attorney General in this court.  In the Complaint, Marathon charges that the Kentucky Act and the Governor's Executive Order implementing it after Hurricane Katrina violate the federal and Kentucky state constitutions.

Marathon charges that the statute is unconstitutionally vague as applied to it and, thus, violates the Due Process Clause of the 14th Amendment to the United States Constitution and Section 2 of the Kentucky Constitution which prohibits arbitrary power. Marathon also charges that the governor's Executive Order implementing the Kentucky Act as to gasoline sellers violates Section 2 of the Kentucky Constitution because it does not set forth a date that it terminates and violates the separation of powers doctrine contained in the Kentucky Constitution because, with it, the Governor instituted permanent price controls.  Finally, Marathon charges that the Kentucky Act violates the Commerce Clause of the United States Constitution because it unreasonably burdens interstate commerce.

4

Marathon asks the court for a declaration that the Kentucky Act and the Executive Order implementing it are unconstitutional and for an injunction prohibiting the Attorney General from enforcing the Kentucky Act.

**E.      Removal and Remand of State Action.**

On May 14, 2007, Marathon removed the state action to this court asserting that this court had jurisdiction over the action pursuant to 28 U.S.C. § 1332 which grants federal district courts original jurisdiction over any action in which the amount in controversy exceeds $75,000 and is between citizens of different states. On May 18, 2007, the Attorney General filed a Motion to Remand the matter to state court.  This court granted that motion on October 3, 2007.

**F.      The Attorney General's Motion to Dismiss the Federal Action and Marathon's Motion to Amend the Federal Complaint.**

On May 18, 2007, the Attorney General filed this Motion to Dismiss the federal court action, arguing that this court should abstain from deciding the federal court action under the *Younger* and *Pullman* abstention doctrines.[1]   After the parties had fully briefed that motion, on September 25, 2007, Marathon filed a Motion for Leave to File Second Amended Complaint[2] and a Motion for Leave to File a Supplemental Brief in Opposition to Defendant's Motion to Dismiss (Rec. No. 19). In the motion, Marathon asks for permission to file an amended complaint adding two additional constitutional claims and "some historical context" to this matter.

As to the "historical context" provided by the Second Amended Complaint, Marathon inserts

---

[1] In light of the court's conclusions with regard to *Younger* abstention, it has not addressed abstention under *Pullman*.

[2] The First Amended Complaint deleted Kentucky's Governor as a defendant making the Attorney General the sole defendant in this action.

5

a section titled "History of Price Controls for Petroleum Products," in which Marathon asserts that economic theory advises against price controls.  Marathon asserts that higher prices attract additional supply which eliminates shortages.  Decreased shortages lowers the prices of the good.  Marathon argues that if prices are not allowed to increase,  increased supply is not likely to occur.  Thus, shortages will remain.  Marathon argues that motor fuel supply will flow toward locations where prices are higher and away from locations where prices are lower. (Rec. No. 19, Tendered Second Amended Complaint, ¶¶ 40-43). Marathon argues that price controls, in reality, impose much higher costs in terms of lost time and inconvenience "than any short-term market-based price increases." (Rec. No. 19, Tendered Second Amended Complaint, ¶ 45).

As to the additional constitutional claims asserted in the Second Amended Complaint, Marathon seeks to add to its claim that the Kentucky Act violates the Due Process Clause of the 14th Amendment and Section 2 of the Kentucky constitution.  Marathon argues that the Kentucky Act does not serve any legitimate public interest.  (Rec. No. 19, Tendered Second Amended Complaint ¶ 57).

Marathon also seeks to add a claim that the statute violates the Supremacy Clause of the United State Constitution because it is pre-empted by the International Energy Program Agreement, 27 U.S.T. 1685 ("IEPA"), and the Energy Policy Conservation Act, 42 U.S.C. § 6201, *et seq.* ("EPCA").  (Rec. No. 19).

In addition, Marathon requests that the court allow it 15 days to file a supplemental brief in response to the Motion to Dismiss and that it grant the Attorney General 15 days to respond.

## II.    ANALYSIS.

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint should not be

dismissed. . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Beto*, 405 U.S. 319, 322 (1972)(citation omitted). "[T]he factual allegations in the complaint must be regarded as true. The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)).

A.      *Younger* **Abstention and Exceptions.**

In his Motion to Dismiss, the Attorney General argues that the court should abstain from accepting jurisdiction over this action pursuant to the *Younger* abstention doctrine. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court required that a federal court abstain from enjoining a pending state criminal proceeding. However, it has been extended by the Supreme Court to encompass civil proceedings. *See, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975). *Younger* requires federal courts to abstain where:

> (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims.

*Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir.1995)(quoting *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir.1989)).

Where these elements are satisfied, this court must abstain absent a few "extraordinary circumstances." *Kugler v. Helfant*, 421 U.S. 117, 123 (1975). *Younger* allowed that such extraordinary circumstances may exist where there is a showing of "bad faith' or 'harassment' by state officials responsible for the prosecution, *Id*. at 124 (quoting, *Younger*, 401 U.S. at 54), where the state law to be applied is "flagrantly and patently violative of express constitutional

7

prohibitions," *Id*. (quoting *Younger*, 401 U.S. at 53), or where there are "extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Id*. (quoting *Younger*, 401 U.S. at 53).

*Younger* abstention is grounded in "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44.

### B.     The Pending State Proceeding and Opportunity to Raise Constitutional Claims.

There is really no dispute that this action meets the first and third elements for *Younger* abstention. As to the first element in the *Younger* abstention analysis, "if a state proceeding is pending at the time the action is filed in federal court, the first criteria for Younger abstention is satisfied." *Kelm*, 44 F.3d at 419 (quoting *Federal Express Corp. v. Tennessee Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir.1991)). Marathon has not disputed that, at the time it filed this action, the state court action had already been filed. Moreover, at the time that this action was filed, the state action had not yet been removed. This action was filed on May 10, 2007. The state action was not removed until May 14, 2007. Thus, there was a state proceeding pending at the time the federal action was filed. Furthermore, this court has determined that the state action should have remained in state court and has remanded it. Thus, there is currently a pending state court action. Accordingly, as Marathon recognizes, the first element of *Younger* is satisfied. (Rec. No. 15, Response at 6).

Skipping ahead to the third element, there is no dispute that Marathon will have an opportunity to assert its constitutional challenges in the state court proceeding. The "pertinent inquiry

8

is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...."
*Moore v. Sims*, 442 U.S. 415, 430 (1979). "[T]he burden on this point rests on the federal plaintiff
to show 'that state procedural law barred presentation of [its] claims.' "*Pennzoil Co. v. Texaco, Inc.*,
481 U.S. 1, 14 (1987) (quoting *Moore*, 442 U.S. at 432). "[W]hen a litigant has not attempted to
present his federal claims in related state-court proceedings, a federal court should assume that state
procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."
*Pennzoil*, 481 U.S. at 15.

Marathon has not argued that it will be barred from presenting its constitutional claims in
Kentucky state courts.  Accordingly, the third *Younger* element is satisfied.

### C.   The Importance of the State Interest.

As to the second element, the issue here is not really whether the state action involves an
important state interest.  Marathon concedes "there is no doubt that Kentucky has an interest in
protecting its citizens and enforcing its laws."(Rec. No. 15, Response at 7).  Courts have recognized
in the *Younger* analysis that states have a strong interest in protecting consumers and in
administering their consumer protection statutes.  *Cedar Rapids Cellular Telephone, L.P. v. Miller*,
280 F.3d 874, 879-80  (8th Cir. 2002)(8th Cir. 2002); *Williams v. Lubin*, --- F.Supp.2d ----, 2007 WL
2812968, at*3 (D. Md. September 25, 2007); *Goleta Nat. Bank v. Lingerfelt*, 211 F.Supp.2d 711,
716 (E.D.N.C. 2002).   In various other contexts, the Supreme Court has recognized the states'
important interest in consumer protection.  *See, e.g.,  Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447,
460 (1978) ("First Amendment"); *Energy Reserves Group, Inc. v. Kansas Power and Light Co.* 459
U.S. 400, 416-17 (1983)("Contracts Clause").  Moreover, in *Puerto Rico Dept. of Consumer Affairs
v. Isla Petroleum Corp.*, 485 U.S. 495, 500 (1988), in determining that the termination of federal

price controls of petroleum products under the EPCA did not preempt state regulation of gasoline prices, the Supreme Court analyzed the state regulation of gasoline prices as a "historic police power[]."

Thus, the pending state proceeding involves an important state interest.

**D.    The Fourth Circuit on Abstention and the Dormant Commerce Clause.**

Marathon argues, however, that the court's analysis of the importance of the state's interest should somehow be different because it brings a dormant Commerce Clause challenge to the Kentucky Act.

The Commerce Clause of the United States Constitution authorizes Congress to "regulate Commerce. . . among the several States. . . ."  U.S. Const. art. I, § 8 cl. 3.  "[T]he very purpose of the Commerce Clause was to create an area of free trade among the several States." *Westinghouse Electric Corporation v. Tully*, 466 U.S. 388, 402 (1984)(citation omitted).  Thus, "[a]lthough the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *South-Central Timber Dev. Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984).

Marathon argues that, where a plaintiff charges that the state has unduly burdened interstate commerce, then the court must weigh the federal government's interest in interstate commerce against the asserted state interest.  Marathon also appears to argue that, in dormant Commerce Clause cases, the state interest can never be important enough to warrant *Younger* abstention because of the "overriding federal interstate commerce interest." (Rec. No. 5, Response at 9).  For this argument, Marathon relies on a Fourth Circuit case, *Harper v. Public Service Comm'n of WVA*, 396 F.3d 348

10

(4th Cir. 2005).

In that case, an Ohio solid waste disposal service challenged a West Virginia statute which prohibited any common carriers engaged in solid waste disposal from operating in West Virginia unless they obtained a certificate of convenience and necessity from the state Public Service Commission (the "PSC"). *Id*. at 350. The PSC ordered the Ohio company to cease collecting solid waste in West Virginia. *Id*. at 351. The Ohio company then sued the PSC in federal district court and the district court abstained under both *Younger* and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

On appeal, the Fourth Circuit determined that, whether abstention was appropriate under *Younger* turned on whether the state interest was "important" enough to require abstention. *Id*. at 352. While the regulations at issue in *Harper* governed the interstate transportation of *solid* waste, the court noted an earlier case in which the Fourth Circuit had determined that very similar regulations governing interstate transportation of *medical* waste violated the dormant Commerce Clause. *Id*. at 357 (citing *Medigen of Kentucky, Inc. v. Public Service Commission*, 985 F.2d 164 (4th Cir. 1993)). The *Harper* court expressly relied on *Medigen* for its conclusion that abstention was not warranted. *Id*. at 357.

Though the *Harper* court never expressly found applicable the *Younger* exception for state acts that are "flagrantly and patently violative of express constitutional prohibitions," it is clear that the *Harper* court determined that the statute at issue qualified for this exception. In fact, the court found that the state interest in that case was an "interest in limiting interstate access to the waste removal market." *Id*. at 355. The court determined that this interest, "*by its very nature* serves to impede interstate commerce." *Id*. The court determined that the provision at issue, "squarely implicat[ed] the Commerce Clause" and that "in light of our decision in *Medigen*," the state's

11

interest could not be strong enough to require abstention. *Id.* at 357. Thus, *Harper* may be read to simply follow the *Younger* exception where a state act patently violates the constitution.

*Harper* may also be read, however, as Marathon argues it should be, to hold that, where a plaintiff brings a commerce clause challenge, no matter the merits of that challenge, the state will never have an important enough interest to justify abstention. In *Life Partners, Inc. v. Morrison*, 484 F.3d 284 (4th Cir. 2007), the Fourth Circuit affirmed the district court's finding that the state statute at issue did not violate the dormant Commerce Clause. *Id.* at 291. In the opinion, the court only briefly addressed the abstention issue. Relying on *Harper*, the court concluded that abstention was not warranted, apparently for the simple reason that the case involved the commerce power. *Id.* at 300-01.

### E.      The Supreme Court and the Sixth Circuit on Abstention and Pre-emption.

Marathon does not cite to any cases in the Sixth Circuit or the Supreme Court in support of its assertion that the abstention analysis should somehow differ where the plaintiff asserts a dormant Commerce Clause challenge as opposed to other constitutional challenges. Nor has this court located any such cases. In fact, in *New Orleans Public Service, Inc. ("NOPSI") v. Council of City of New Orleans*, 491 U.S. 350 (1989), the Supreme Court clearly indicated that no constitutional challenge should be treated any differently than any other constitutional challenge for abstention purposes.

In that case, the plaintiff argued, similar to what Marathon argues here with regard to its dormant Commerce Clause claim, that a "substantial" federal pre-emption claim should preclude *Younger* abstention because such a claim "calls into question the prerequisite of *Younger* abstention that the State have a legitimate, substantial interest in its pending proceedings." *Id.* at 364. The plaintiff argued that the district court "should take a quick look at the merits" and, if the court

12

determines that the pre-emption claim is "substantial," it should resolve it. *Id*.  The Court expressly rejected that argument, explaining that all constitutional challenges "call into question the legitimacy of the State's interest in its proceedings reviewing or enforcing that action. Yet it is clear that the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." *Id*. at 365.

The plaintiff's second argument in *NOPSI* was that the *Younger* exception for state acts that are "flagrantly and patently violative of express constitutional prohibitions" should apply. *Id*. at 366-67. The Court used the phrase "facially conclusive" to describe such a claim and allowed that such a claim may preclude abstention but determined that the plaintiff had not brought a "facially conclusive" pre-emption claim. *Id*. at 367.

Thus, in *NOPSI*,  the pre-emption claim did not receive any different treatment than any other constitutional claim under *Younger*.  With any constitutional claim, there is a *Younger* exception where the plaintiff shows the state act "flagrantly and patently" violates the constitution or, in other words, where the plaintiff presents a "facially conclusive" claim that the statute violates the constitution. *See H.P. Hood, Inc. v. Comm'r of Agric., Food, and Rural Resources*, 764 F.Supp. 662, 675 (D.Me. 1991)(explaining that *NOPSI* "distinguishes between two standards: the more difficult to prove 'flagrantly and patently violative' standard, which [*NOPSI*] equates to 'facially conclusive' and the easier to prove 'substantial' standard.")

Shortly after *NOPSI*, the Sixth Circuit relied on it and held that the fact that the plaintiff asserts a pre-emption claim should not "alter the way in which we view the abstention question." *CSXT, Inc. v. Pitz*, 883 F.2d 468, 471 (6th Cir. 1989).  The court reasoned:

State judges are not inferior to federal judges. They have the ability to interpret

13

federal statutes, however complex. Though preemption is a constitutional issue, it is not of a different order of magnitude than due process, first amendment and other constitutional issues which often arise during the course of a state or federal administrative and judicial proceeding. To hold that a state court may decide federal constitutional issues generally but should not decide preemption issues makes little sense.

*Id*. at 473.

Later, in *GTE Mobilnet of Ohio v. Johnson*, 111 F.3d 469 (6th Cir. 1997), the Sixth Circuit explained that where the plaintiffs present a "facially conclusive" pre-emption claim, then the federal court need not abstain.  If the plaintiff's claim is not "facially conclusive," and the *Younger* elements are met, then the federal court should abstain and let the state resolve the pre-emption issue   *Id*. at 476-77.

In *Harper*, the Fourth Circuit recognized the Supreme Court's holding in *NOPSI*.  *Harper*, 396 F.3d at 355.  Nevertheless, the *Harper* court determined that "[w]hen there is an overwhelming federal interest," such as that implicated by the dormant Commerce Clause, "no state interest, for abstention purposes, can be nearly as strong," *id.*. at 356.  In support of this assertion, the *Harper* court cited to a footnote in the Eleventh Circuit case, *TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292 (11th Cir. 1998) and to the Third Circuit decision in *Zahl v. Harper*, 282 F.3d 204, 210 (3rd Cir. 2002). *Id*. at

*TranSouth*, however, involved abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), not under *Younger*. Thus, the *TranSouth* court did not address the importance of the state interest in the state proceeding.  Nor was the dormant Commerce Clause implicated.

In *Zahl v. Harper*, 282 F.3d 204 (3rd Cir. 2003), the other case the *Harper* court relied on for

14

the proposition that the abstention analysis is different where the dormant Commerce Clause is implicated, the Third Circuit dealt with the issue of whether to abstain where the plaintiff claims the state's act has been pre-empted by federal law. Despite the fact that the case involved *Younger* abstention and pre-emption, the *Zahl* court does not mention *NOPSI*.  Instead, relying on other Third Circuit cases, the *Zahl* court determined that, "the presence of [a pre-emption] claim requires us to balance the state interest served by abstention against the federal interest asserted to have usurped the state law." *Zahl*, 282 F.3d at 210.

To the extent that *Harper* holds that the dormant Commerce Clause is treated differently for *Younger* abstention purposes than any other constitutional provision, it appears to do so in reliance on the Third Circuit's different treatment of pre-emption claims under *Younger*.  Because different treatment under *Younger* for pre-emption claims was rejected in *NOPSI*, *CSXT,* and *GTE Mobilnet*, this court declines to follow *Harper*.[3]  Instead, in determining whether abstention under *Younger* is

---

[3]While after *NOPSI* the Third Circuit has continued to hold, as it did in *Zahl,* that the *Younger* abstention analysis is different for pre-emption cases, other Circuits upon which the Third Circuit relied in adopting that holding – the Eighth, Ninth and Eleventh – now disagree. *See Ford Motor Co. v. Insurance Com'r of Com. of Pa.*, 874 F.2d 926, 934 (3rd Cir. 1989)(citing *Middle South Energy, Inc. v. Arkansas Public Service Comm'n*, 772 F.2d 404, 417 (8th Cir.1985) and *Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1409 (9th Cir.1984)); *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n*, 791 F.2d 1111, 1116-17 (3rd Cir. 1986)(citing *Middle South Energy, Champion*, and *Baggett v. Dep't of Prof'l Reg*., 717 F.2d 521, 524 (11th Cir. 1983)).

The Eighth Circuit has stated that, in light of *NOPSI, Middle South Energy* is "no longer good law" to the extent that it suggests that the mere assertion of even a "substantial" federal pre-emption claim prohibits a federal court from abstaining under *Younger. Cedar Rapids Cellular Telephone, L.P. v. Miller*, 280 F.3d 874, 880 (8th Cir. 2002).

In *Fresh Intern. Corp. v. Agricultural Labor Relations Bd.*, 805 F.2d 1353 (9th Cir. 1986), the Ninth Circuit has clarified that *Champion* was a case in which pre-emption was "readily apparent" because the state law at issue fell squarely within the holding of a prior Supreme Court case finding a similar law pre-empted. *Id*. at 1361.  The court further explained that "[o]ur reading of *Champion*, and the 'readily apparent' rule is consistent with the recognized exception to *Younger* abstention for statutes that are 'flagrantly and patently' violative of the constitution." *Id*. at 1361 n.12.

In *Hughes v. Attorney General of Florida,* 377 F.3d 1258 (11th Cir. 2004), the Eleventh Circuit explained that in *Baggett* it held that pre-emption was "readily apparent" and, thus, *Younger* abstention was inappropriate. *Id*. at 1264. Discussing *NOPSI*, the court held that, "[r]egardless of the differences in semantics between the terms 'facially conclusive' and 'readily apparent,' their import is the same: only the clearest of federal pre-emption claims would require a federal court to hear a pre-emption claim when there are underlying state court proceedings and when that claim can be raised in the state forum."  *Id*. at 1265.

appropriate in this action, the court will subject Marathon's dormant Commerce Clause claim to the same analysis as any other constitutional claim. Thus, because the three *Younger* elements are met, this court must abstain unless one of the *Younger* exceptions applies, including that Marathon has presented a facially conclusive claim that the Kentucky Act violates the dormant Commerce Clause.

### F.   Whether Marathon Presents a "Facially Conclusive" Dormant Commerce Clause Claim.

Accordingly, the next issue before the court is whether Marathon has presented a facially conclusive claim that the Kentucky Act violates the dormant Commerce Clause. If so, then this court need not abstain. If the claim is not facially conclusive then the court should abstain and permit the state to fully address the dormant Commerce Clause claim. Thus, a determination by this court that abstention is not warranted is not a determination that the statute does not violate the dormant Commerce Clause. Instead, it is merely a determination that the statute is not flagrantly unconstitutional and that final resolution of the issue requires a more extensive analysis than this court is permitted to undertake where the three *Younger* elements are met.

In *NOPSI*, the Supreme Court concluded that the plaintiffs had not presented a "facially conclusive" claim of federal pre-emption because the state's acts were not directly or indirectly prohibited by the federal statute at issue, the regulations implementing it, or the case law applying it. 491 U.S. at 367. In *United States v. Commonwealth of Kentucky*, 252 F.3d 816 (6th Cir. 2001), the court determined that  the plaintiff had presented a "facially conclusive" pre-emption claim because the court was not required to make a detailed analysis of state law, make factual findings, or inquire beyond the challenged statute's four corners in finding that the state act was pre-empted. *Id*. at 826.

16

Accordingly, in determining whether the Kentucky Act flagrantly violates the constitution, the court will consider the face of any applicable statutes, any regulations implementing them, and any applicable case law.  In order for the court to determine that a state statute is "patently unconstitutional" under *Younger*, it must be "flagrantly and patently violative of express constitutional provisions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53-54.

The parties have now fully briefed the issue of whether the court should abstain from this action in light of the dormant Commerce Clause challenge presented in Marathon's First Amended Complaint. In its response to the Attorney General's Motion to Dismiss, Marathon does not point to any statute, regulation or case law in support of its argument that the Kentucky Act violates the dormant Commerce Clause.  Instead, Marathon appears to argue that abstention is not warranted here simply because it has raised a dormant Commerce Clause challenge. The court has rejected that argument. Accordingly, the court has no basis for determining that the statute patently violates the dormant Commerce Clause.  The court must, therefore, abstain from hearing the claims raised in the First Amended Complaint in deference to the pending state proceeding.

### G.    Other Constitutional Violations and "Bad Faith."

Marathon also argues that various other "extraordinary circumstances" exist in this matter that should preclude abstention even if the three *Younger* elements are met. Marathon argues that the Attorney General's "open-ended ability to enforce a statute meant to be triggered by national disasters and states of emergency" coupled with his enforcement of the statute "using a different standard" than prescribed in the statute renders the statute "patently unconstitutional" and indicates it is being enforced in an "unconstitutional manner," and "for purposes of harassment." (Rec. No.

17

15, Response at 10).  Marathon's response brief contains only a cursory treatment of this argument.
Based on that argument, the court cannot find that the statute is flagrantly unconstitutional or that
the Attorney General is harassing Marathon or otherwise acting in bad faith.

Marathon also argues that the Attorney General has indicated he intends to enforce the
Kentucky Act and the Kentucky Consumer Protection Act, KRS § 367.170, *et seq.,* in a "selective
and otherwise unconstitutional manner."  Marathon states that the Attorney General has issued
"thinly veiled threats of future prosecution" under the statute.  The sole such threat Marathon cites
is the Attorney General's statement that the initial prosecutions under the Kentucky Act were
intended as a "shot across the bow" of the petroleum refining, wholesale, and retail markets.  The
court cannot find that this statement demonstrates the flagrantly unconstitutional conduct or  "bad
faith" necessary for a *Younger* exception.

**H.    Marathon's Motion to Add a Pre-emption Claim.**

After the parties had fully briefed the issue of whether this court should abstain from this
action in light of Marathon's dormant Commerce Clause claim, Marathon moved to amend its
complaint to add a pre-emption claim and to add to its due process claims. As stated, in the proposed
amended complaint, Marathon asserts that the Kentucky Act is pre-empted by the IEPA and the
EPCA.

Rule 15(a) states that leave to file an amended complaint shall be "freely given with justice
so requires." Fed. R. Civ. P. 15(a).  In deciding whether to grant a motion to amend, courts should
consider "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party,
repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party,
and futility of amendment."  *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th

18

Cir. 2005). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Harford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Marathon's motion to amend its complaint has been fully briefed by the parties. The Attorney General argues that Marathon's motion should be denied on grounds that the amendment is futile because, whether the pre-emption claim is added or not, the court must still dismiss this action on abstention grounds. In reply, Marathon argues that abstention is not required because its claim that the Kentucky Act is pre-empted by the IEPA and the EPCA is "facially conclusive."

The Supreme Court has summarized the various tests to determine whether federal law pre-empts state legislation as follows:

> The Supremacy Clause of Art VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 368-69 (citations omitted).

"The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *Id.* at 369.

Marathon argues that the EPCA expressly pre-empts states laws that conflict with it, relying on the following provision:

> No State law or State program in effect on December 22, 1975, or which may become effective thereafter, shall be superseded by any provision of subchapter I or II of this chapter or any rule, regulation, or order thereunder, except insofar as such State law or State program is in conflict with such provision, rule, regulation, or order.

19

42 U.S.C. § 6396.

The referenced subchapter I mandates the creation of a Strategic Petroleum Reserve to reduce the impact of disruptions in supplies of petroleum products and to carry out the obligations of the United States under the international energy program. 42 U.S.C. §§ 6231, 6234. Subchapter II grants the President the authority to prescribe rules for implementing the obligations of the United States related to the international allocation of petroleum products. 42 U.S.C. § 6271.

Marathon argues that the Kentucky Act directly conflicts with the EPCA. It argues that the IEPA and the EPCA "constitute the mechanism by which the United States petroleum market can be controlled in the wake of supply interruptions" and that the Kentucky Act conflicts with this federal mechanism because it "artificially depresses the price of gasoline and as a result increases the demand and consumption of gasoline ...." (Rec. No. 19, Memorandum at 5-6).

This immediately raises at least two factual issues: whether the Kentucky Act artificially depresses gasoline prices and whether depressed prices increase demand and consumption of gasoline. Thus, Marathon's pre-emption claim cannot be "facially conclusive." Resolution of the claim will require a court to consider more than simply the face of the Kentucky Act, the EPCA, any implementing regulations, and any applicable case law.

The Kentucky Act prohibits excessive prices during declared emergencies for a variety of goods including petroleum. To determine whether this measure conflicts with the EPCA's mandate for the creation of a strategic petroleum reserve or this country's obligations with regard to the international allocation of petroleum products would require an extensive factual inquiry. For example, the Attorney General argues that there is no conflict because the petroleum reserve keeps petroleum prices from soaring during an emergency and this is precisely what the Kentucky Act

20

seeks to do.  (Rec. No. 21, Response at 4 n. 3).

The Attorney General also relies on the Supreme Court's decision in *Puerto Rico Dept. of Consumer Affairs v. Isla Petroleum, Corp.*, 485 U.S. 495 (1988).  That case involved an EPCA provision that terminated the president's authority to implement federal price controls on petroleum products which had been granted under the older Emergency Petroleum Allocation Act ("EPAA").  *Id*. at 497-98.  After the President's regulatory authority terminated, Puerto Rico implemented price controls on petroleum products.  *Id*. at 498-99.  Several oil companies filed suit, arguing that the price controls were pre-empted.  The oil companies argued that the EPAA "evinced a federal intent to enter the field of petroleum allocation and price regulation, and that the EPCA never countermanded that intent."  *Id*. at 500.  The oil companies argued that the EPCA simply changed the nature of the federal control of petroleum allocation and price regulation from "one of federal hands-on regulation to one of federally mandated free-market control."  *Id*.

Justice Scalia, writing for the Court, rejected that argument, stating that, the pre-emption analysis must begin with the assumption that "the historic police powers of the States" are not to be pre-empted "unless that was the clear and manifest purpose of Congress."  *Id*. at 500.  The Court determined that there was no text in "any extent federal regulation that might plausibly be thought to imply exclusivity."  *Id*. at 501.  "Without a text that can. . .plausibly be interpreted as *prescribing* federal pre-emption it is impossible to find that a free market was mandated by federal law."  *Id*.  The Court further determined that, with the EPCA, Congress had "withdrawn from all substantial involvement in petroleum allocation and price regulation.  There being no extant action that can create an inference of pre-emption in an unregulated segment of an otherwise regulated field, pre-emption, if it is intended, must be explicitly stated."  *Id*. at 504.

21

Marathon argues that *Isla Petroleum* is legally and factually distinguishable from this case. (Rec. No. 24, Reply at 8). The court recognizes that the oil companies' pre-emption argument in *Isla Petroleum* was different than the one Marathon makes in this case. In *Isla Petroleum*, the oil companies argued that states were pre-empted from enacting petroleum price controls because Congress had, by implication, mandated that the free market control petroleum prices. Here, Marathon argues that states are pre-empted from enacting petroleum price controls because the EPCA provides for a federal response to petroleum supply interruptions and state price controls interfere with that federal response. As explained, however, this argument requires an extensive factual inquiry. Furthermore, to the extent that there are facts that render inapplicable here the *Isla Petroleum* finding that state gasoline price controls are not pre-empted under the EPCA, it is precisely those sort of significant facts that prohibit Marathon's pre-emption claim from being deemed a facially conclusive one.

It may well be that an extensive factual inquiry would lead to a conclusion that the Kentucky Act conflicts with the EPCA. However, as stated in *NOPSI*, where such a factual inquiry is required, the constitutional violation cannot be flagrant or facial and the *Younger* exception for such constitutional violations cannot apply. Accordingly, the court will deny Marathon's motion to amend its complaint on the grounds that any such amendment would be futile. Even if Marathon were permitted to add its pre-emption claim and additional due process allegations, this court must abstain from this action. Such abstention is required in deference to the state court proceedings and in recognition of the fact that the state has not flagrantly and patently violated the constitution, there is no evidence that the state is otherwise acting in bad faith, and that Kentucky's courts are competent to decide whether the state's actions are pre-empted.

22

I.      **The Motions to File Additional Briefs.**

Marathon also asks the court to permit each party to further brief the Attorney General's Motion to Dismiss. Marathon argues that further briefing on the abstention issue is necessary in light of its proposed pre-emption claim. As discussed above, however, the clear law of the Sixth Circuit is that this court must abstain where a pre-emption claim is made and the three *Younger* elements are met unless the claim is facially conclusive. The parties have already briefed the issue of whether Marathon has presented a facially conclusive pre-emption claim. This was done in the context of Marathon's motion to amend its complaint and the Attorney General's argument that any such amendment would be futile. (Rec. No. 24, Reply, § II at 2- 8). In resolving the futility issue, the court was required to consider whether Marathon's pre-emption claim is facially conclusive. It is clear that it is not. No further briefing on this issue is necessary. Accordingly, Marathon's Motion for Leave to File a Supplemental Brief in Opposition to Defendant's Motion to Dismiss will be denied. For the same reasons, the court will deny the Attorney General's Motion for Leave to File Surreply to Marathon's Motion for Leave to File Second Amended Complaint and Supplemental Brief.

III.    **CONCLUSION.**

For all these reasons, the court hereby ORDERS as follows:

1)      the Attorney General's Motion to Dismiss Marathon's First Amended Complaint (Rec. No. 9) on abstention grounds is GRANTED;

2)      Marathon's Motion for Leave to File Second Amended Complaint (Rec. No. 19) is DENIED as futile;

3)      Marathon's Motion for Leave to File a Supplemental Brief in Opposition to

Defendant's Motion to Dismiss (Rec. No. 19) is DENIED; and

4)      the Attorney General's Motion for Leave to File Surreply to Marathon's Motion for

Leave to File Second Amended Complaint and Supplemental Brief (Rec. No. 25) is

DENIED.

Dated this 20th day of November, 2007.

**Signed By:**

_**Karen K. Caldwell**_

**United States District Judge**